## STATE OF CONNECTICUT *v.* LUIS ALFONSO (11815)

PETERS, C. J., HEALEY, PARSKEY, SHEA and HADDEN, Js.

Argued January 10—decision released April 9, 1985

*Preston Tisdale,* assistant public defender, for the appellant (defendant).

*C. Robert Satti, Jr.,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* for the appellee (state).

PETERS, C. J. The principal issue on this appeal is whether the trial court erred in refusing to suppress incriminating statements made by the defendant in the course of custodial interrogation. The defendant, Luis Alfonso, was convicted, after a trial by jury, of the offenses of possession of cocaine in violation of General Statutes (Rev. to 1981) § 19-481 (a)[1] and posses-

---

[1] At the time the alleged offenses were commited, General Statutes § 19-481 (a) provided: "(a) Any person who possesses or has under his control

sion of marijuana in violation of General Statutes (Rev. to 1981) § 19-481 (c).[2] He was sentenced to two concurrent sentences of one year, suspended after three months, and probation for two years. The defendant appeals from the judgment of conviction.

The defendant raises three issues on appeal. He claims that the trial court erred: (1) in denying his motion to suppress allegedly incriminating statements and subsequently denying his motion for a new trial; (2) in its charge to the jury; and (3) in denying his motion for acquittal. We find error in part, and remand the case with direction to render judgment of acquittal on the conviction for possession of marijuana.

The jury could reasonably have found the following facts. The defendant Luis Alfonso is a Spanish-speaking Cuban immigrant with sixteen years of schooling in Cuba, including three years of education in electrical engineering. At the time of his arrest, he was twenty-seven years old and had lived in the United States approximately two years. On February 20, 1982, six

any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than three thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years, or be fined not more than five thousand dollars, or be both fined and imprisoned; and for any subsequent offense may be imprisoned not more than twenty-five years, or be fined not more than ten thousand dollars, or be both fined and imprisoned." Section 19-481 (a) was transferred and set out as § 21a-279 (a) in 1983.

[2] At the time the alleged offenses were committed, General Statutes § 19-481 (c) provided: "Any person who possesses or has under his control any quantity of any controlled substance other than a narcotic substance, or a hallucinogenic substance other than marihuana or who possesses or has under his control less than four ounces of a cannabis-type substance, except as authorized in this chapter, may be fined not more than one thousand dollars, or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense may be imprisoned not more than five years, or fined not more than three thousand dollars or be both fined and imprisoned." Section 19-481 (c) was transferred and set out as § 21a-279 (c) in 1983.

police officers went to the defendant's apartment in Bridgeport to execute a search and seizure warrant whose validity has not been challenged. When the officers arrived, the defendant and a visitor, Mario Arango, were at home; the defendant's two roommates were elsewhere. The officers' search led to the discovery of cocaine in the living room and marijuana in the kitchen. The defendant was immediately placed under arrest for possession of the drugs.

Upon his arrest, while still at his apartment, the defendant was read his *Miranda* rights in Spanish by Officer Jesus Llanos, a Spanish-speaking officer. In response to a question from Llanos, the defendant responded, in Spanish, that the cocaine was his, that it was for a party, and that Arango had nothing to do with it.

The defendant was then taken to a police station, where he was again informed by Llanos in Spanish of his *Miranda* rights. The defendant then read and signed a written waiver form in Spanish. Approximately an hour and a half later, the defendant was interrogated by Detective Robert Lundequist, with Llanos acting as interpreter. The defendant was calm throughout the questioning and was not under the influence of drugs or alcohol. Lundequist typed out a statement in English, which the defendant did not sign.[3] However, when Llanos showed the defendant a vial of cocaine taken from the apartment, the defendant admitted that it was his.

I

The defendant argues that the trial court erred in admitting his incriminatory statements into evidence

[3] For reasons unrelated to the voluntariness of the confession, the statement was not admitted into evidence. See *State* v. *Rosa,* 170 Conn. 417, 426–27, 365 A.2d 1135, cert. denied, 429 U.S. 845, 97 S. Ct. 126, 50 L. Ed. 2d 116 (1976).

because he had not knowingly and willingly waived his constitutional privilege against self-incrimination. Relying on the rule of *Miranda* v. *Arizona,* 384 U.S. 436, 475, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966),[4] he claims that he did not execute a knowing waiver of his right to counsel.[5] The evidence at trial demonstrated, according to the defendant, that he lacked the ability to understand the warnings given to him by the police.

In reviewing a trial court's determination of a knowing and voluntary waiver of *Miranda* rights, we examine the record to see whether the state has met its burden of proving waiver by a preponderance of the evidence. *State* v. *Perry,* 195 Conn. 505, 516 n.8, 488 A.2d 1256 (1985); *State* v. *Harris,* 188 Conn. 574, 580, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983). In this case, the relevant evidence was produced at a suppression hear-

---

[4] *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), holds that "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

[5] At oral argument, defense counsel conceded that no claim was being advanced that the defendant had been denied his sixth amendment right to counsel.

ing at which the only witnesses were Llanos and the defendant.[6]

The state's evidence indicated that Llanos gave the defendant *Miranda* warnings in Spanish on three different occasions, and each time the defendant indicated his understanding of what he was being told.[7] Although Llanos offered conflicting testimony about whether the defendant, upon his arrest at his apartment, had asked any questions about what his rights were, Llanos testified without qualification that the defendant had never asked for an attorney. The defendant had inquired about his right to remain silent, but he had not pursued his right to counsel, and at one point had stated that he did not wish to retain counsel. The officers did not intimidate or physically abuse the defendant at any time.

The defendant contradicted this version of what had transpired in certain particulars. Although he acknowledged having read and signed the *Miranda* waiver form at the police station, he claimed that he had not been informed of his rights at his apartment. He denied having made either of the incriminatory statements attributed to him by Llanos. He also attacked the credibility of Llanos' testimony as being conflicting and contradictory.

The defendant virtually concedes that this evidentiary argument would not alone suffice to rebut the state's showing of an express waiver, manifested both by his

---

[6] The suppression hearing was held in the midst of the prosecutor's case-in-chief. Officer Llanos had been in the process of testifying about the arrest when the jury was excused. After the jury was excused, Llanos simply continued where he had left off. Thus, some of the testimony referred to as having been heard at the hearing was actually heard before the hearing began.

[7] *Miranda* warnings were administered at the defendant's apartment, upon his arrival at the police station, and while he was in a holding cell awaiting questioning. When the defendant asked questions about what his rights were, his questions were fully answered.

signed waiver form and his willingness to answer questions while in custody. *North Carolina* v. *Butler,* 441 U.S. 369, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979); *State* v. *Harris,* supra, 580. Even where fact-finding implicates constitutional rights, and thus must be strictly scrutinized, questions of credibility are primarily within the province of the trier of fact. *State* v. *Perry,* supra, 516 n.8.[8]

The crux of the defendant's claim is that, despite what he said and did, his waiver was not knowing and voluntary because he was culturally disabled from adequately understanding his legal rights. He maintains that, as a recent immigrant, he was not sufficiently alerted by standard *Miranda* warnings to the significance of his right to counsel and to remain silent. The questions he did ask about whether he had a right to remain silent should have alerted the police to stop their interrogation because they should have recognized that he was unable knowingly and willingly to waive constitutional rights that he could not comprehend.[9]

We find the defendant's argument, in the circumstances of this case, unpersuasive. There was no linguistic barrier to a knowing and voluntary waiver, the defendant concededly having been addressed by the police at all times in his native tongue. The defendant

---

[8] Because the motion was heard in the midst of the trial; see footnote 6, supra; the trial judge had already heard the testimony of one other officer at the scene, whose testimony corroborated that of Llanos that the defendant had been advised of his rights at the apartment.

The defendant argues that following the hearing more evidence emerged which supported his claim for suppression because the evidence was inconsistent and contradictory. He brought this to the attention of the trial court on his motion for a new trial. Our conclusion with regard to the later evidence is no different than our conclusion with regard to the evidence introduced at the hearing. Our review of the record reveals no reason to disturb the finding of the trial court.

[9] There is nothing on the record to support a claim that, in light of the defendant's recent immigrant status, these questions in themselves constituted an attempted exercise of his right to remain silent.

was, furthermore, a well-educated adult, and he was not totally unfamiliar with our legal system, having been arrested at least once previously. Despite the defendant's foreign background, the trial court was entitled to conclude that the state had established a knowing and voluntary waiver of the defendant's constitutional rights.

## II

The defendant's second claim of error is a two-pronged attack on the trial court's instructions to the jury. The defendant argues that the court erroneously failed to direct the jury to draw negative inferences from the state's failure to produce certain evidence and that it mischaracterized certain parts of the testimony of Llanos.

In his request to charge, the defendant asked that the jury be instructed to draw negative inferences from the state's failure to call Llanos' Spanish-speaking partner, Ramos. Under the rule of *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960), which we have held applicable to criminal cases; see *State* v. *Williams*, 195 Conn. 1, 14, 485 A.2d 570 (1985); to be entitled to such a charge the defendant must show both that Ramos was available and that she was a witness whom the state would naturally have produced. *State* v. *Carrione*, 188 Conn. 681, 686, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983).

Ramos did not play a major role in the defendant's arrest and interrogation. She was one of six officers who went to the defendant's apartment to execute the search warrant, but had no particular contact with the defendant himself at that time. Subsequently, at the police station, she helped to explain the *Miranda* warnings to the defendant. This limited participation is insufficient to support a presumption that Ramos was

a witness whom the state would naturally have called to testify. " 'A possible witness whose testimony is for any reason comparatively unimportant, cumulative or inferior to what has been offered should be dispensed with on the general ground of expense and inconvenience, without anticipation that an inference may be invoked.' " *State* v. *Carrione,* supra, 688, citing *State* v. *Brown,* 169 Conn. 692, 705, 364 A.2d 186 (1975). In light of Llanos' extensive testimony, Ramos' testimony would have been cumulative and her absence did not entitle the defendant to a *Secondino* charge.

The defendant also requested a charge on the state's failure to produce fingerprint evidence. A jury may be instructed to draw a negative inference from "the failure of a party to produce [physical] evidence which it is within his power to produce." *Turner* v. *Scanlon,* 146 Conn. 149, 161, 148 A.2d 334 (1959); see McCormick, Evidence (2d Ed. 1972, pocket part 1978) § 272. A necessary predicate for such an instruction was that the state had fingerprint evidence available to it. The defendant does not assert that the police actually had such evidence, and Llanos testified that he did not think such evidence had ever been obtained. On this state of the record, the trial court cannot be faulted for refusing to charge on fingerprint evidence.

The defendant's final claim of error with respect to the charge arises out of the trial court's mischaracterization of Llanos' testimony. The trial court erroneously stated that Llanos had testified that the defendant had admitted possessing both the cocaine and the marijuana, when in fact the admission had been limited to the cocaine. The defendant, however, failed to object to the charge when it was given. For this reason, the defendant is precluded from relying upon this claim of error now. "The purpose of requiring trial counsel to object properly is not merely formal but serves the important function of alerting the trial court to error

while there is time to correct it without ordering a retrial. See *State* v. *Jones,* 193 Conn. 70, 88, 475 A.2d 1087 (1984)." *State* v. *Rothenberg,* 195 Conn. 253, 263, 487 A.2d 545 (1985).

## III

The defendant's final claim of error is that the evidence adduced at trial was insufficient to support a finding of guilty beyond a reasonable doubt. In reviewing such a claim, we view the evidence, as we have repeatedly stated, with a view toward sustaining the verdict of the jury. *State* v. *Scielzo,* 190 Conn. 191, 196, 460 A.2d 951 (1983).

In order to prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. See *State* v. *Williams,* 169 Conn. 322, 335, 363 A.2d 72 (1975); *State* v. *Harris,* 159 Conn. 521, 531–32, 271 A.2d 74 (1970), cert. dismissed, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630 (1971). Where the defendant is not in exclusive possession of the premises where the narcotics are found, "it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." *Evans* v. *United States,* 257 F.2d 121, 128 (9th Cir.), cert. denied, 358 U.S. 866, 79 S. Ct. 98, 3 L. Ed. 2d 99, reh. denied, 358 U.S. 901, 79 S. Ct. 221, 3 L. Ed. 2d 150 (1958); see generally annot., 56 A.L.R.3d 948 (1974).

The testimony of Llanos concerning the defendant's incriminating statements provided the necessary supporting evidence for the defendant's conviction for possession of cocaine. The defendant contends that the evidence was insufficient because Llanos' testimony was varied and contradictory. Credibility is,

however, a question for the trier of fact, and the trier is entitled to believe some or all of the testimony that has been presented. *State* v. *Rothenberg,* supra, 257. If the jury believed Llanos, there was sufficient evidence to convict the defendant of possession of cocaine.

We reach a different conclusion, however, with regard to the defendant's conviction for possession of marijuana. At trial, the defendant denied telling the police the marijuana was his. Jorge Salas, one of the defendant's roommates, also denied possession, as did Mario Arango, who was visiting the defendant at the time of the arrest. The defendant's other roommate did not testify; according to the defendant, he was last seen the day before the defendant's arrest. Even if the jury did not credit the defendant's denial, it was not entitled to conclude that the marijuana was his without positive evidence supporting such a conclusion. "While it is true that it is within the province of the jury to accept or reject a defendant's testimony, a jury in rejecting such testimony cannot conclude that the opposite is true." *Novak* v. *Anderson,* 178 Conn. 506, 508, 423 A.2d 147 (1979); see also *Anderson* v. *Anderson,* 191 Conn. 46, 56, 463 A.2d 578 (1983).

There was no other circumstantial evidence from which the jury could reasonably infer that the defendant was aware of the presence of the marijuana in the apartment. The marijuana was discovered in a common area, it was not among any of the defendant's personal possessions, and there was no evidence that the defendant had used marijuana in the past. See *State* v. *Harris,* 159 Conn. 521, 532, 271 A.2d 74 (1970), cert. dismissed, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630 (1971). Furthermore, the defendant's admissions concerning his possession of the cocaine do not support an inference that he likewise possessed the marijuana. See *People* v. *Monson,* 255 Cal. App. 2d 689, 691–93, 63 Cal. Rptr. 409 (1967). In sum, the state offered no support-

ing evidence that would have justified an inference that the defendant possessed the marijuana.

There is no error in the defendant's conviction of the crime of possession of cocaine. There is error in the defendant's conviction of the crime of possession of marijuana, that judgment of conviction is set aside, and the case is remanded to the trial court with direction to render a judgment of acquittal on that charge.

In this opinion HEALEY, SHEA and HADDEN, Js., concurred.

PARSKEY, J., concurring in part and dissenting in part. I agree with the court's opinion except for Part III insofar as it relates to the marijuana charge. Whatever may be the inferences reasonably to be drawn in other factual contexts, on the facts of this case there was sufficient evidence to sustain the defendant's conviction of possession of marijuana. The premises in which the drugs were found consisted of a small single story cottage occupied by the defendant and two other individuals and contained a single door for both entry and exit. One enters the cottage through the kitchen to the left of which is a small living room. When the police entered the cottage pursuant to a search warrant, they found a bag of marijuana seeds, a bag of marijuana and a vial of cocaine. The location of the drugs is a matter of some significance. The marijuana was found in the kitchen cabinet. The vial of cocaine was found in a ceramic boot on a table next to a couch in the living room. It was readily observable among an assortment of pens and pencils.

It is apparent that the occupants of the cottage were not playing hide and seek with the drugs in their joint possession. The drugs were not secreted in a private hideaway. Instead they were placed in a common area. The vial of cocaine was virtually in plain view in the

living room and the marijuana was kept in a place in the kitchen that, as a matter of common knowledge, is subject to frequent use by the occupants. Taking all these circumstances into account it is reasonable to infer that the defendant had knowledge of the existence and location of the marijuana that was found in the kitchen. To hold otherwise is to establish a rather anomalous principle of law, namely, that in the case of joint occupancy of premises, the finding of contraband, not in plain view, in any common area will result in the acquittal of all of the occupants of knowing possession of the contraband if they are smart enough to pursue a strategy of simian detachment. I would rather adhere to the "abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom"; *State* v. *Zayas,* 195 Conn. 611, 620, 490 A.2d 68 (1985); and therefore I would affirm the defendant's conviction on both the cocaine and the marijuana charges.