STATE OF CONNECTICUT *v.* JESSIE J. PUGH
(AC 16347)

O'Connell, Foti and Hennessy, Js.

Argued February 26—officially released May 27, 1997

*Glenn W. Falk*, special public defender, with whom, on the brief, were *Donald D. Dakers*, special public

defender, and *Ezra C. Levy*, law student intern, for the appellant (defendant).

*Mitchell S. Brody*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James Dinnan*, assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a,[2] burglary in the first degree in violation of General Statutes § 53a-101 (a) (1),[3] carrying a pistol without a permit in violation of General Statutes § 29-35,[4] and risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21.[5] The defendant claims that the trial court improperly (1) admitted statements made by the defendant to a police detective and (2) permitted the state to introduce into evidence the transcript of a witness' testimony at the probable cause hearing. We affirm the judgment of the trial court.

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

[2] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[3] General Statutes § 53a-101 provides in relevant part: "(a) A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument . . . ."

[4] General Statutes § 29-35 provides in relevant part: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

[5] General Statutes (Rev. to 1993) § 53-21 provides in relevant part: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be impaired . . . shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

The jury reasonably could have found the following facts. On September 17, 1993, the victim, Curtis Meyers, was in the third floor apartment of Sheila White at 555 Winchester Avenue in New Haven. At some point during the day, White went out on a second floor porch and took part in a conversation with the defendant and others about fake narcotics that had been sold to one of the defendant's friends. The defendant, upon discovering through this conversation that the person who was selling bags of fake narcotics might have been Meyers, stormed into White's apartment. Meyers was in the bedroom with White's eighteen month old son. Meyers, using White as a shield, pushed her and the defendant out of the bedroom, managing to slam the door shut. The defendant fired three shots through the door, killing Meyers.

I

The defendant claims that the trial court improperly refused to suppress the oral statement he had made to Detective Leroy Dease of the New Haven police department. The defendant argues that that statement was the product of custodial interrogation. He contends that he did not knowingly and intelligently waive his *Miranda*[6] rights before speaking[7] because he did not understand the consequences of his stated intention to speak with Dease "off the record."

The defendant was apprehended in North Carolina on October 28, 1993, and returned to Connecticut on November 15, 1993. Upon the defendant's return to Connecticut, Dease visited the defendant in the lock-

---

[6] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[7] Specifically, the defendant contends that his right to counsel and his right to remain silent were violated by the admission of his statements. Nevertheless, the defendant combines the violations of the two rights in his brief because his claim on appeal concerns whether the waiver of these rights was knowing and intelligent.

up at the New Haven police department. The defendant agreed to leave the lock-up and go with Dease to the investigative services unit. Upon arriving at the investigative services unit, the defendant stated that he had an attorney who had told him not to talk to the police, but that he wanted to talk "off the record." The officer read the defendant the *Miranda* warnings from a standard advisement of rights form. The defendant read the warnings on this form, apprised the officer that he understood these warnings, but refused to sign the form. Dease initialed each paragraph and signed and dated the form. The defendant then indicated that he still wanted to talk "off the record." Dease responded, "Tell me." The defendant admitted that after the shooting of the victim, he panicked and fled by motorcycle to North Carolina. Additionally, he admitted that while in North Carolina, he made several telephone calls to the New Haven police department to ascertain whether a warrant for his arrest had been issued.

The trial court did not suppress the statement because it determined that, although there was a custodial interrogation, the defendant had waived his *Miranda* rights when he asked Dease if he could speak to him "off the record." The trial court determined that "off the record" meant that the statement not be recorded or written. It allowed Dease to testify before the jury concerning the oral statements made by the defendant.

We conclude that the defendant's statement was made in the course of a custodial interrogation. "Two conditions . . . give rise to the requirement of advice of rights under *Miranda*: (1) the suspect must be in the custody of law enforcement officials; and (2) the suspect must be subjected to interrogation." *State* v. *Medina*, 227 Conn. 456, 463, 636 A.2d 351 (1993). "The term interrogation under *Miranda* is not limited to questioning explicitly designed to elicit an incriminating

response but extends to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from a suspect." (Internal quotation marks omitted.) Id., 463–64.

The defendant was clearly subject to custodial interrogation. Dease took the defendant from the lock-up to the investigative services unit. When they arrived at the unit, Dease read him the *Miranda* warnings. Dease brought the defendant up to investigative services for the purposes of questioning him. When the defendant expressed that he wanted to speak "off the record," Dease responded, "Tell me." The circumstances of the conversation and Dease's encouragement demonstrate that there was more than a mere willingness to listen.

We next address the waiver issue. "[C]ourts indulge every reasonable presumption against waiver . . . and do not presume acquiescence in the loss of fundamental rights." (Internal quotation marks omitted.) *State* v. *Guess*, 39 Conn. App. 224, 231, 665 A.2d 126, cert. denied, 235 Conn. 924, 666 A.2d 1187 (1995). "The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. . . . [T]he question of waiver must be determined on the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. . . . The issue of waiver is factual, but our usual deference to the finding of the trial court on questions of this nature is qualified by the necessity for a scrupulous examination of the record to ascertain whether such a finding is supported by substantial evidence. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Toste*, 198 Conn. 573, 580, 504 A.2d 1036 (1986).

"For a waiver to be valid, it must not only be voluntary, but must also constitute a knowing and intelligent

relinquishment or abandonment of a known right or privilege." (Internal quotation marks omitted.) *State* v. *Mercer*, 208 Conn. 52, 70, 544 A.2d 611 (1988). We conclude that, although the defendant understood his *Miranda* rights, he did not understand the consequences of his stated intention to speak with Dease "off the record." The defendant's ignorance of the fact that even off the record statements could be used against him demonstrates an invalid waiver of his *Miranda* rights.

In *State* v. *Mercer*, supra, 208 Conn. 52, our Supreme Court addressed whether a waiver was valid under similar factual circumstances. After the defendant in that case requested to speak "off the record," the police officer responded that he was a police officer "twenty-four hours a day" and that anything the defendant said he could report. The court determined that the defendant's waiver was knowing and intelligent. In the present case, the defendant refused to sign the form acknowledging that he had been read the *Miranda* warnings. He requested that his statement be off the record even after Dease read him the *Miranda* warnings. Dease did not clarify the warnings to the defendant as the police officer in *Mercer* did. The state claims that the *Miranda* advisement was sufficient clarification because the defendant's intelligence was uncontested, he had had previous dealings with the police and he had received advice from his attorney not to speak to the police. The defendant still maintained his misconceptions that he was not relinquishing his *Miranda* rights.

Although we conclude that the defendant did not intelligently waive his *Miranda* rights, we find the admission of the statement into evidence to be harmless error. The test of whether a constitutional violation is harmless error depends on whether it appears " 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *State* v.

*Gerardi,* 237 Conn. 348, 362, 677 A.2d 937 (1996). "In other words, we review the record to determine whether there is a reasonable possibility that the evidence . . . complained of might have contributed to the conviction . . . ." (Internal quotation marks omitted.) Id. "[W]hen there is independent overwhelming evidence of guilt, a constitutional error would be rendered harmless beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Hoeplinger,* 206 Conn. 278, 295, 537 A.2d 1010 (1988).

The state's case was based on White's account of the homicide and the police investigation, which corroborated her testimony. The defendant's statement only added evidence of consciousness of guilt to the state's case. The trial court referred to the statement in charging the jury on evidence tending to show a consciousness of guilt. The trial court had sufficient evidence, other than the statement, to justify the charge on flight.

Moreover, the defendant's statements were merely cumulative of other testimony. The fact that the defendant had fled to North Carolina would have been introduced to the jury through the testimony of the police officer who went to North Carolina to extradite the defendant. Additionally, the defendant's employer testified that the defendant fled to North Carolina because of rumors that he had killed Meyers. The defendant's statements to Dease, therefore, were not instrumental to the jury's finding of guilt. We conclude that the admission of the defendant's statements was harmless error.

## II

The defendant claims that the trial court improperly permitted the state to introduce into evidence the transcript of Sheila White's testimony at the probable cause hearing. He argues that the state did not make a good faith effort to locate White and her testimony at the

hearing on probable cause lacked the requisite "indicia of reliability."

At the probable cause hearing, White testified to the facts leading up to the murder. Her eyewitness testimony established a possible motive and presented a factual background. In addition, she stated that she saw the defendant shoot the victim. She did not testify at trial, however, because the state was unable to locate her.

Prior testimony of an unavailable witness is admissible in a subsequent trial as long as it satisfies a two part test. *State* v. *Lapointe*, 237 Conn. 694, 737, 678 A.2d 942, cert. denied, 519 U.S. 994 , 117 S. Ct. 484, 136 L. Ed. 2d 378 (1996). "First . . . [t]he prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. . . . [Second] [e]ven after the declarant is satisfactorily shown to be unavailable, his statement is admissible only if it bears adequate indicia of reliability . . . which serve to afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement." (Citations omitted; internal quotation marks omitted.) Id.

The trial court admitted the probable cause transcript into evidence. The court stated: "All right. I am satisfied that the state has met the efforts they should have made in this case to find her. I don't know that a [United Illuminating] bill[8] would produce more results, although certainly there's nothing to stop them from continuing to do this. And indeed, they obviously ought to continue. I will permit the use of the prior testimony at the [hearing in probable cause]; hearing in probable cause testimony is accompanied by the right to cross-examine. I

---

[8] At the crime scene, the police found a bill in White's son's name. The defendant contends that the state should have investigated to see if other bills were addressed to White's son at a different address.

presume there was cross-examination in this particular case, but [nevertheless] it was available to the defense counsel and that is what is required."

"[T]he question of whether an effort to locate a missing witness has been sufficiently diligent to declare that person unavailable is one that is inherently fact specific and always vulnerable to criticism, due to the fact that one, in hindsight, may always think of other things." (Internal quotation marks omitted.) *State* v. *Rivera*, 221 Conn. 58, 67, 602 A.2d 571 (1992).

Evidence presented demonstrates that James Harris, an inspector for the state, had searched for White. Harris began his search for White on September 28, 1995, at her last known address, 555 Winchester Avenue. He checked the addresses of White's mother and another relative in New Haven, but found no one to be at either address. The inspector called the victim's mother because she lived near the location of the murder and because the police reports indicated that White had been the victim's girlfriend. He checked with the department of motor vehicles, the department of correction, the telephone company, the post office, the New Haven police department, the office of adult probation and the welfare office in New Haven, but was not successful in locating White.

"[T]he testimony given at a probable cause hearing has the identical safeguards to insure reliability and trustworthiness as the testimony given at the trial." (Internal quotation marks omitted.) Id., 68. The state utilized White's testimony to establish motive. White admitted to being a drug user, but contended that she had not used drugs on the day the murder took place. She admitted to having consumed alcohol on the day in question. She also admitted to being a convicted felon. The defendant proffered testimony that White's testimony was not credible. The jury was in a position

to evaluate this testimony as a basis for impeaching White's probable cause testimony. White's testimony, however, was corroborated by police investigation. The testimony of the police officers supported the reliability of White's probable cause testimony.

The state sufficiently satisfied the two part test for the admissibility of the unavailable witness testimony. The state demonstrated that it made a good faith effort to locate White and the testimony had the requisite indicia of reliability. We conclude that the admission of White's testimony from the probable cause hearing was not improper.

The judgment is affirmed.

In this opinion the other judges concurred.