STATE OF CONNECTICUT *v.* ROBERT GALLICHIO
(AC 21632)

Lavery, C. J., and Schaller and Spear, Js.

---

Argued February 20—officially released July 23, 2002

*Stephen F. Cashman,* for the appellant (defendant).

*Joy K. Fausey,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* chief state's attorney, and *Terri L. Sonnemann,* deputy assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Robert Gallichio, appeals from the judgment of conviction of operating a motor

vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a) (2)[1] as a second offender pursuant to § 14-227a (h).[2] The defendant claims that the court improperly (1) instructed the jury on the application of the statutory rebuttable presumption that allows the jury to determine the defendant's blood alcohol level at the time of the alleged offense[3] and (2) found that the state had proven beyond

---

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle on a public highway of this state . . . (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means (A) a ratio of alcohol in the blood of such person that is ten-hundredths of one per cent or more of alcohol, by weight . . . ."

[2] General Statutes § 14-227a (h) provides in relevant part: "Any person who violates any provision of subsection (a) of this section shall . . . (2) for conviction of a second violation within ten years after a prior conviction for the same offense, (A) be fined not less than one thousand dollars nor more than four thousand dollars, (B) be imprisoned not more than two years, one hundred twenty consecutive days of which may not be suspended or reduced in any manner, and sentenced to a period of probation requiring as a condition of such probation that such person perform one hundred hours of community service, as defined in section 14-227e, and (C) have such person's motor vehicle operator's license or nonresident operating privilege suspended for three years or until the date of such person's twenty-first birthday, whichever is longer . . . ."

[3] General Statutes § 14-227a (c) provides in relevant part: "Except as provided in subsection (d) of this section, in any criminal prosecution for violation of subsection (a) or (b) of this section, evidence respecting the amount of alcohol or drug in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath, blood or urine shall be admissible and competent provided: (1) The defendant was afforded a reasonable opportunity to telephone an attorney prior to the performance of the test and consented to the taking of the test upon which such analysis is made; (2) a true copy of the report of the test result was mailed to or personally delivered to the defendant within twenty-four hours or by the end of the next regular business day, after such result was known, whichever is later; (3) the test was performed by or at the direction of a police officer according to methods and with equipment approved by the Department of Public Safety and was performed in accordance with the regulations adopted under subsection (e) of this section; (4)

a reasonable doubt that the defendant was a second offender pursuant to § 14-227a (h). The state concedes and we agree that there was insufficient evidence for the court to conclude that the defendant was a second offender, and, accordingly, we reverse the judgment of conviction as to the enhanced sentence pursuant to § 14-227a. We reject the defendant's first claim and affirm the judgment of conviction of operating a motor vehicle while under the influence of intoxicating liquor.

The jury reasonably could have found the following facts. On November 7, 1999, at approximately 10:53 p.m., a Newington police officer stopped the defendant after witnessing him operating his motor vehicle erratically. After the defendant failed several field sobriety tests, the officer arrested him. At the police station, the defendant submitted to a breath test at approximately 11:21 p.m. that measured his blood alcohol content (BAC) at 0.207 percent. The officer administered a sec-

the device used for such test was checked for accuracy in accordance with the regulations adopted under subsection (e) of this section; (5) an additional chemical test of the same type was performed at least thirty minutes after the initial test was performed or, if requested by the police officer for reasonable cause, an additional chemical test of a different type was performed to detect the presence of a drug or drugs other than or in addition to alcohol, provided the results of the initial test shall not be inadmissible under this subsection if reasonable efforts were made to have such additional test performed in accordance with the conditions set forth in this subsection and such additional test was not performed or was not performed within a reasonable time, or the results of such additional test are not admissible for failure to meet a condition set forth in this subsection; and (6) evidence is presented that the test was commenced within two hours of operation. In any prosecution under this section it shall be a rebuttable presumption that the results of such chemical analysis establish the ratio of alcohol in the blood of the defendant at the time of the alleged offense, except that if the results of the additional test indicate that the ratio of alcohol in the blood of such defendant is twelve-hundredths of one per cent or less of alcohol, by weight, and is higher than the results of the first test, evidence shall be presented that demonstrates that the test results and the analysis thereof accurately indicate the blood alcohol content at the time of the alleged offense."

ond test at approximately 11:54 p.m. that measured the defendant's BAC at 0.189 percent. Both test results indicated a BAC in excess of 0.10 percent, a BAC in violation of the limit established by § 14-227a. The state filed a two part information, charging the defendant in the first part with operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a and in the second part with previously having been convicted of the same offense pursuant to § 14-227a (h). The jury found the defendant guilty of operating a motor vehicle while under the influence of intoxicating liquor, and the trial court found the defendant guilty of being a second offender pursuant to § 14-227a (h). This appeal followed.

I

The defendant first claims that the court improperly instructed the jury on the application of the rebuttable presumption contained in § 14-227a (c). Specifically, the defendant asserts that the court improperly instructed the jury that if it found the six conditions precedent set forth in § 14-227a (c); see footnote 3; for the admissibility of the results of a chemical analysis, it could then determine the BAC of the defendant at the time of the alleged offense. He argues that the instruction relieved the state of its burden of proving beyond a reasonable doubt that the defendant had an elevated BAC at the time of the offense because the charge (1) allowed the jury to find an elevated BAC on the basis of criteria applicable only to the admissibility of the chemical analysis and (2) transformed the admission of the chemical analysis results into a conclusive presumption as to the defendant's BAC at the time of the alleged offense.[4] The first argument is subsumed in

_____

[4] The relevant portion of the court's instruction provided: "Now, also, part of the statute says, in any prosecution under this section, it shall be a rebuttable presumption that the results of such chemical analysis establish the ratio of alcohol in the blood of the defendant at the time of the alleged offense. So, in order for that, you'll also have to then take into account the

our discussion of the argument concerning the conclusive presumption.

The defendant objected to the court's instruction, arguing that the presumptive language was improper. The court overruled the objection and stated that it had relied on *State* v. *Nokes*, 44 Conn. App. 40, 44, 686 A.2d 999 (1996), in composing its instructions.

Before addressing the merits of the defendant's claim we first state our standard of review. A defective instruction on an essential element of the crime charged raises a constitutional issue. "An alleged defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled. . . . *State* v. *Spillane*, 255 Conn. 746, 757, 770 A.2d 898 (2001); see also *State* v. *Cerilli*, 222 Conn. 556, 584 n.16, 610 A.2d 1130 (1992) (perceiv[ing] no functional

other aspects of this particular statute. I'll read them to you.

"One, the defendant was offered a reasonable opportunity to telephone an attorney prior to the performance of the test, and he consented to taking the test upon which such analysis was made. Two, a true copy of the report of the test results were mailed or personally delivered to the defendant within twenty-four hours. Three, the test was performed by or at the direction of a police officer according to the methods and with equipment approved by the department of public health. And, then four, that the device used for such tests was checked for accuracy in accordance with the regulations—the test was before or after. And an additional chemical test of the same type was performed at least thirty minutes after the initial test was performed. And that the evidence is presented that the test was commenced within two hours of the operation, okay.

"So, those are the things that you look at and come to the conclusion, then, if it comes to that, you established that those things have been accomplished, then the readings of the tests raise a rebuttable presumption that that was the volume of alcohol in his blood at the time of operation. Okay.

"I'll read that to you again. If a rebuttable presumption that the results of such chemical analysis establish the ratio of . . . alcohol in the blood of the defendant at the time of the alleged offense. A rebuttable presumption, basically said, you can accept it unless you feel that it hasn't been established, okay. So, you can take that concept in that statute into consideration and your determining what the blood alcohol content of the defendant was at the time of the operation of the motor vehicle."

difference between harmless error standard requiring court to determine, on whole record, whether constitutional error harmless beyond reasonable doubt, and standard of whether there was no reasonable possibility that jury was misled)." (Internal quotation marks omitted.) *State* v. *Williams*, 258 Conn. 1, 26, 778 A.2d 186 (2001).

In *Nokes*, we stated that "[t]o pass constitutional muster, a presumption must be cast as a permissive inference [that] suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion. . . . A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved. *Francis* v. *Franklin*, 471 U.S. 307, 314, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985).

"Instructions relating to § 14-227a (c) should fulfill the legislature's intent that a jury may infer a defendant's blood alcohol content at the time of the offense under appropriate factual circumstances. Accordingly, we construe . . . statutory inferences as permissive inferences that a jury may draw under appropriate circumstances in which such an inference is rational or reasonable. *State* v. *Gerardi*, [237 Conn. 348, 360, 677 A.2d 937 (1996)].

"If . . . other facts or circumstances are introduced and the totality of the evidence could reasonably and logically support the inference, then the jury may be instructed that it may draw such a permissive inference. . . . [T]he jury must be instructed that it may infer facts only upon finding sufficient predicate statutory and nonstatutory facts and circumstances that are rationally connected with the ultimate facts inferred. Id., 361. . . . [T]he ultimate fact to be proven is that the defendant's blood alcohol content at the time of the

offense was 0.10 percent or greater. According to the statute, this fact may be presumed if the jury finds that after testing according to statutory requirements, the test results show that the defendant's blood alcohol content was 0.10 percent or greater. To find this ultimate fact, the jury must first determine if the statutory guidelines were followed. The test must have been performed by a proper person, the device used must be shown to have been working properly, and the test must have been performed within the proper time frame." (Internal quotation marks omitted.) *State* v. *Nokes*, supra, 44 Conn. App. 44–45.

We conclude that the trial court improperly charged the jury with respect to the statutory rebuttable presumption because it cast its instructions in terms of a rebuttable presumption rather than a permissive inference. Specifically, the court stated: "Now, also, part of the statute says, in any prosecution under this section, it shall be a rebuttable presumption that the results of such chemical analysis establish the ratio of alcohol in the blood of the defendant at the time of the alleged offense. So, in order for that, you'll also have to then take into [account] the other aspects of this particular statute. I'll read them to you.

* * *

"So, those are the things that you look at and come to the conclusion, then, if it comes that, you established that those things have been accomplished, then the readings of the tests raise a rebuttable presumption that that was the volume of alcohol in his blood at the time of operation. Okay.

"I'll read that to you again. If a rebuttable presumption that the results of such chemical analysis establish the ratio of . . . alcohol in the blood of the defendant at the time of the alleged offense. A rebuttable presumption, basically said, you can accept it unless you feel

that it hasn't been established, okay. So, you can take that concept in that statute into consideration and your determining what the blood alcohol content of the defendant was at the time of the operation of the motor vehicle." See footnote 4.

In *State* v. *Nokes,* supra, 44 Conn. App. 44, this court concluded that an instruction regarding § 14-227a (c), which was cast in rebuttable presumption language, even though such language was used in the statute, was improper. This court further concluded that although the instruction was improper, any error was harmless. This court based its decision on *State* v. *Gerardi,* supra, 237 Conn. 356, in which our Supreme Court held that an instruction containing rebuttable presumption language violated the due process clause and that the error was not harmless beyond a reasonable doubt. The trial court in *Gerardi* charged the jury in terms of a mandatory rebuttable presumption rather than a permissive inference when instructing on possession of a machine gun for an aggressive or offensive purpose pursuant to General Statutes § 53-202 (d), (e) and (g). "In *Gerardi,* [our Supreme Court] concluded that the legislature could not have intended that the jury be required to infer that a defendant possessed a machine gun for an offensive or aggressive purpose from the mere fact that the gun was unregistered or that the jury was required to infer that all the occupants of a vehicle possess a machine gun simply because it is located in that car. The legislature could have intended only that a jury may infer possession under appropriate factual circumstances." *State* v. *Nokes,* supra, 45–46.

"Although the *Gerardi* charge did not specifically instruct the jury that it was the defendant's burden to rebut the presumptive evidence, that was clearly the implication of the words used. The *Nokes* charge did not inform the jury that a presumption was to be taken

as sufficient proof by itself of an element of the crime, but it did require the presumptions to be overcome by the defendant through the introduction of other evidence and allowed the jury to decide whether the defendant's evidence successfully rebutted the presumptions." (Internal quotation marks omitted.) Id., 43–44. Like the instruction in *Nokes*, the court's instruction here did not inform the jury that a presumption was to be taken as sufficient proof by itself of an element of the crime, but it did require the presumptions to be considered with "other aspects of [the] particular statute" and allowed the jury to "accept [the rebuttable presumption] unless you feel that it hasn't been established." See footnote 4. Pursuant to *Nokes*, we conclude that the trial court's jury instructions were improper.

The *Nokes* court, however, determined that even though the instruction was improper, it was harmless. We now must determine whether the instruction here was harmless beyond a reasonable doubt. See id., 44. We look to the evidence, the issues in the case and the entire charge to assess the harmlessness of such an improper instruction. *State* v. *Prioleau*, 235 Conn. 274, 288, 664 A.2d 743 (1995). "In performing harmless error analysis, we keep in mind that [i]n determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . *State* v. *Spillane*, supra, [255 Conn. 757]; *State* v. *Anderson*, 227 Conn. 518, 532, 631 A.2d 1149 (1993) (charge considered from standpoint of its effect on jury in guiding it to

proper verdict)." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 258 Conn. 26.

We conclude that the court's instruction was harmless beyond a reasonable doubt. The court explained to the jurors that they may draw reasonable inferences and explained what an inference was by using examples to demonstrate the concept. The court charged the jury that to find the defendant guilty, it must find that the state proved the subsidiary facts beyond a reasonable doubt before drawing any inferences from those facts. The court further explained to the jury that to determine whether the ratio of alcohol in the defendant's blood exceeded the statutory limit, it may consider the statute and each of the statutory requirements.

Furthermore, the court did not limit the jury's consideration to those elements, but told the jurors they could consider them in determining the blood alcohol content of the defendant. The two blood tests were performed approximately thirty-three minutes apart, which is after thirty minutes, but before two hours, as required by the statute. The jury could have concluded from the evidence before it that the defendant was afforded an opportunity to telephone his attorney prior to taking the test, that he consented to the taking of the test, that a qualified person performed the test properly, that the device was working properly and that the test was performed within the proper time frame. From these subsidiary facts, the jury reasonably could have found beyond a reasonable doubt the ultimate fact that the defendant's blood alcohol content exceeded the statutory requirement of 0.10 percent at the time of the offense. Moreover, the trial court charged the jury that to find the defendant guilty, it must find that the state proved beyond a reasonable doubt that the defendant's blood alcohol content was 0.10 percent or more at the time of the incident. See id., 46. Under these circumstances, there is no reasonable possibility that the jury

was misled, i.e., the improper instruction was harmless beyond a reasonable doubt.

## II

The defendant's second claim is that the state failed to prove beyond a reasonable doubt that he was a second offender pursuant to § 14-227a (h). He asserts that the state did not produce any evidence that he was the same Robert Gallichio whose record of conviction was introduced into evidence. The state concedes that, although identical names are evidence that each name refers to the same person, standing alone, it is not proof beyond a reasonable doubt that the defendant is the person who was convicted. See *State* v. *Grady*, 153 Conn. 26, 33, 211 A.2d 674 (1965). We agree that there was insufficient evidence for the court to have concluded beyond a reasonable doubt that the defendant and the person named in the record of the conviction were one and the same.

The judgment is reversed as to the enhanced sentence for previously having been convicted of operating a motor vehicle while under the influence of intoxicating liquor and the case is remanded with direction to render judgment of guilty of operating a motor vehicle while under the influence of intoxicating liquor and not guilty under the second part of the information.

In this opinion the other judges concurred.