STATE OF CONNECTICUT *v.* ALAN L. WEISENBERG
(AC 22590)

Foti, Dranginis and Bishop, Js.

Argued June 3—officially released September 23, 2003

*David B. Rozwaski,* special public defender, for the appellant (defendant).

*Rita M. Shair,* senior assistant state's attorney, with whom were *Kevin T. Kane,* state's attorney, and, on the brief, *Michael E. Kennedy,* assistant state's attorney, for the appellee (state).

### Opinion

DRANGINIS, J. The defendant, Alan L. Weisenberg, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of drugs in violation of General Statutes § 14-227a (a) (1).[1] He also appeals from the conviction on part B of the information, rendered by the court, of

---

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence . . . if such person operates a motor vehicle on a public highway of this state . . . (1) while under the influence of intoxicating liquor or any drug or both . . . ."

being a third time offender under General Statutes (Rev. to 1999) § 14-227a (h) (3).[2] On appeal, the defendant claims that the state did not present sufficient evidence to prove beyond a reasonable doubt that he was guilty of violating § 14-227a (a) (1) and (h) (3). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the afternoon of August 7, 1999, at approximately 1:05 p.m., Michael Coovert was driving southbound from Colchester to Mystic on Route 85 when he saw the defendant driving his red Thunderbird erratically near the Montville-Waterford town lines. Coovert testified that he saw the defendant's vehicle cross the center line of the road into the other lane several times. At some point, Coovert observed the defendant's car almost hit a motorcyclist and a bicyclist. Coovert then called 911 to report the defendant's erratic driving.

Officer Stephen Bellos of the Waterford police department received a dispatch concerning a possible drunken driver on Route 85 in Waterford. Bellos testified that the defendant's vehicle crossed the double yellow line as it proceeded southbound along the highway, forcing him, as he traveled in the northbound lane, off the road.

Officer Cynthia Munoz of the Waterford police department stopped the defendant's car, and approached the defendant, informing him of the reason for the stop and asking him to produce his driver's license, registration and proof of insurance. Munoz testified that the defendant had difficulty retrieving those

[2] General Statutes (Rev. to 1999) § 14-227a (h) provides in relevant part: "Any person who violates any provision of subsection (a) of this section shall . . . (3) for conviction of a third violation within ten years after a prior conviction for the same offense, be fined not less than one thousand dollars nor more than four thousand dollars and imprisoned not more than two years, one hundred twenty consecutive days of which may not be suspended or reduced in any manner, and have his motor vehicle operator's license or nonresident operating privilege suspended for three years . . . ."

documents. During their conversation, the defendant admitted to Munoz that he had taken three different prescribed medications that morning: Imipramine, methadone and Xanax, and that they made him shaky. Munoz observed that the defendant had slurred speech and constricted pupils. On the basis of those observations, she asked the defendant to exit the car. Munoz further testified that the defendant, when getting out of his car, had to hold onto the car to steady himself.

Munoz then asked the defendant to perform two field sobriety tests. Munoz first administered the walk and turn test, which required the defendant to walk heel to toe in a straight line. Then, she administered the one-leg stand test, in which the defendant had to raise one foot off the ground and count for thirty seconds. The test results were consistent with her belief that the defendant was under the influence of alcohol or drugs.

Thereafter, Munoz took the defendant into custody and transported him to the police station. At the police station, the defendant became more unsteady and was transported by ambulance to Lawrence and Memorial Hospital in New London for treatment. Kathleen Katamura, the emergency room physician, examined the defendant and found that he had slurred speech due to the medications and coordination problems. Thereafter, Katamura ordered a routine urine test, which later revealed the presence of methadone. Katamura discharged the defendant with orders not to drive while taking Xanax.

The defendant subsequently was charged with operating a vehicle under the influence of drugs. In support of his defense, the defendant presented the testimony of Naimet A. Syed, his psychiatrist, Carolyn Delgado, the service coordinator of a methadone clinic, and Vasco Gomes, his mechanic. After the close of the state's case and again at the conclusion of the evidence,

the defendant orally made motions for a judgment of acquittal. The court denied those motions, and the jury subsequently convicted the defendant on part A of the information, which alleged a violation of § 14-227a (a) (1). At the sentencing hearing, the defendant requested a judgment of acquittal and a new trial. The court denied both motions. The defendant pleaded guilty to part B of the information, which alleged that he was a repeat offender under § 14-227a (h) (3). Thereafter, the court sentenced the defendant to two years imprisonment, execution suspended after one year, with two years probation. The special conditions of the defendant's probation included that he undergo alcohol abuse testing and treatment, and that he not operate a motor vehicle while his license is under suspension. This appeal followed. Additional facts will be discussed where relevant to the issues in this appeal.

I

The defendant first claims that the evidence adduced at trial was insufficient to sustain his conviction of operating a vehicle while under the influence of drugs. The defendant does not dispute that he had taken three prescribed medications. He does, however, argue that the proof at trial was insufficient evidence "connecting [his] use of medication to his driving on the date in question." We disagree.

To be convicted of operating a motor vehicle while under the influence of drugs pursuant to § 14-227a, the state must prove beyond a reasonable doubt that the defendant operated his motor vehicle on a public highway while under the influence of intoxicating liquor or drugs or both. The defendant conceded that he was the operator of the vehicle and that he was driving on a public highway. His challenge relates to the last element, which provides that he operated the motor vehicle while under the influence of drugs.

The appellate standard of review of sufficiency of the evidence claims is well established. "In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"The evidence must be construed in a light most favorable to sustaining the jury's verdict. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . .

"We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. . . . We are content to rely on the [jury's] good sense and judgment." (Citations omitted; internal quotation marks omitted.) *State* v. *Gentile*, 75 Conn. App. 839, 861–63, 818 A.2d 88, cert. denied, 263 Conn. 926, 823 A.2d 1218 (2003).

Governed by that standard of review, we conclude that the state submitted ample evidence from which

the jury could find that the defendant was guilty beyond a reasonable doubt of operating a vehicle while under the influence of drugs. The record discloses that the state presented evidence showing that the combination of imipramine, methadone and Xanax had a depressive effect on the defendant's central nervous system. The emergency room physician testified that the defendant was not fit to drive on the afternoon in question. There was evidence that a nurse had warned the defendant about mixing methadone with other drugs. Bellos testified that he had observed the defendant's erratic driving and had to swerve to avoid a collision with the defendant's car. Munoz testified that the defendant had some difficulty getting out of the car and producing his driver's license, registration and insurance documents when ordered to do so. Munoz also testified that the defendant had slurred speech and constricted pupils, and had performed poorly on two field sobriety tests. The jury also had before it testimony from a witness who observed the defendant's car cross the center line of the road and enter the other lane of traffic before nearly hitting a motorcyclist and bicyclist. That evidence, coupled with defendant's admission to having taken three prescription medications, was sufficient evidence to show that the defendant was impaired and that his impairment was caused by the medications.

Although the defendant attempted to prove that the car's mechanical problems could have caused his car to "clunk" and "sway," the jury was free to disbelieve that evidence. "It is the jury's right to accept some, none or all of the evidence presented. . . . Moreover, [e]vidence is not insufficient . . . because it is conflicting or inconsistent. [The jury] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . .

decide what—all, none, or some—of a witness' testimony to accept or reject." (Citation omitted; internal quotation marks omitted.) *State* v. *Pranckus*, 75 Conn. App. 80, 87, 815 A.2d 678, cert. denied, 263 Conn. 905, 819 A.2d 840 (2003).

Viewing the evidence in a light most favorable to sustaining the verdict, we conclude that the cumulative effect of the evidence was more than sufficient to support the jury's conclusion that the state had met its burden of production regarding each element of the crime of operating a motor vehicle while under the influence of drugs.

II

The defendant's second claim is that the evidence was insufficient to convict him of being a third time offender in violation of § 14-227a (h) (3)[3] because the state presented no evidence of the prior convictions other than that the person convicted of those crimes had the identical name as does the defendant. We disagree.

The following facts are relevant to our resolution of the defendant's unpreserved claim. The state filed a part B information, alleging that the defendant previously had been convicted of operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (a) (1) on February 4, 1992, and on April 1, 1997. After canvassing the defendant, the court accepted his guilty plea and sentenced him in accordance with the enhanced penalty provisions of § 14-227a (h) (3). The defendant did not move to withdraw

_____

[3] The defendant also argues in his reply brief that the state did not prove how much imipramine, methadone and Xanax was in his blood at the time of the alleged offense. That argument is without merit. Unlike the situation in which a defendant is charged with operating a motor vehicle under the influence of alcohol and the state must prove the defendant's blood alcohol content, the state does not have to prove the quantity of drugs in the blood to obtain a conviction for operating a motor vehicle while under the influence of drugs.

his guilty plea prior to sentencing,[4] electing instead to raise the issue of the allegedly defective plea canvass for the first time on appeal. Accordingly, he seeks review of the court's alleged violation of Practice Book § 39-19 under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[5] or, in the alternative, under the plain error doctrine. See Practice Book § 60-5.[6]

The defendant claims that his guilty plea was constitutionally defective because the court accepted it when there was no factual basis for it in violation of Practice Book § 39-27 (5). Relying on *State* v. *Gallichio*, 71 Conn. App. 179, 190, 800 A.2d 1261 (2002), the defendant correctly points out that the state does not necessarily establish that a defendant committed an offense just because someone with the same name has been convicted of the same crime. The defendant asserts that

[1] Practice Book § 39-26 provides: "A defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in Section 39-27. A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed."

[5] Pursuant to *State* v. *Golding*, supra, 213 Conn. 233, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. "In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Citation omitted; internal quotation marks omitted.) *State* v. *Jordan*, 64 Conn. App. 143, 150, 781 A.2d 310 (2001).

[6] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

because the only evidence offered was his name, the court could not have concluded that he was the same person who previously had been convicted of operating a vehicle under the influence.

We conclude that the defendant's reliance on *Gallichio* is misplaced because it clearly is distinguishable from the facts of the present case. In *Gallichio*, the state did not present any evidence other than certified copies of the defendant's prior convictions. This court, citing *State* v. *Grady*, 153 Conn. 26, 33, 211 A.2d 674 (1965), concluded that the trial court improperly had imposed the enhanced penalties of § 14-227a (h) (3) on the defendant because "there was insufficient evidence for the court to have concluded beyond a reasonable doubt that the defendant and the person named in the record of the conviction were one and the same." *State* v. *Gallichio*, supra, 71 Conn. App. 190. Here, the defendant's record of prior convictions was read into evidence and, during the court's plea canvass, the defendant admitted to those prior convictions.[7] Specifically, the record reflects that the defendant responded affirmatively to the court when it asked him whether

[7] Additionally, the transcript of the plea canvass indicates that before accepting the defendant's plea, the court conducted a lengthy examination of the defendant pursuant to Practice Book §§ 39-19 through 39-21. During the plea canvass, the court explained to the defendant that he was waiving his rights to a trial by jury and to present evidence, to force the state to prove the second part of the information beyond a reasonable doubt, to confront and to cross-examine witnesses, and to remain silent. The court then asked the defendant if his attorney had reviewed with him his constitutional rights and the ramifications of waiving those rights. The defendant indicated that his attorney had not talked with him. The court then gave the defendant time to discuss with his attorney the consequences of the decision to plead guilty. After ensuring that no one had forced or threatened the defendant to plead guilty, the court made sure that he understood that as a result of his guilty plea, he was in violation of his probation. The court further explained the mandatory minimum sentence. On the basis of the foregoing, we have no hesitation in concluding that the defendant's guilty plea met both the federal and state standards for validly entered guilty pleas and is, therefore, valid.

on February 4, 1992, and April 1, 1997, he was convicted in Manchester of operating a vehicle while under the influence of intoxicating liquor.

"On appeal, the claim for review must meet all four prongs of the *Golding* analysis to be successful. . . . Because the defendant failed to demonstrate that a constitutional violation clearly exists and clearly deprived him of a fair trial, his claim fails to satisfy the third condition of *Golding*." (Citations omitted.) *State* v. *Williams*, 60 Conn. App. 575, 579, 760 A.2d 948, cert. denied, 255 Conn. 922, 763 A.2d 1043 (2000).

We also conclude that the defendant's claim does not merit plain error review. "[P]lain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . The claimed error here is not so egregious or obvious as to merit such review." (Internal quotation marks omitted.) *State* v. *Beverly*, 72 Conn. App. 91, 104–105, 805 A.2d 95, cert. denied, 262 Conn. 910, 810 A.2d 275 (2002). Accordingly, because the defendant's arguments under both *Golding* and the plain error doctrine are unavailing, the defendant's claims fail.

The judgment is affirmed.

In this opinion the other judges concurred.