IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 7, 2026 Session

**STATE OF TENNESSEE v. MARKELL NOLEN**

**Appeal from the Circuit Court for Madison County**
No. 22-661    Donald H. Allen, Judge

_____

**No. W2023-01487-CCA-R3-CD**

_____

A jury convicted the Defendant of one count of possessing methamphetamine with the intent to sell; one count of possessing methamphetamine with the intent to deliver; and one count of driving with a cancelled, suspended, or revoked driver's license. The trial court merged the drug convictions and subsequently sentenced the Defendant to an effective term of ten years' incarceration. In this direct appeal, the Defendant claims that he should receive a new trial based on the ineffective assistance of counsel at trial. The Defendant also challenges the sufficiency of the evidence supporting his drug convictions. We affirm the trial court's denial of the Defendant's claim of ineffective assistance of counsel. We further hold that the evidence is not sufficient to support the Defendant's drug convictions. Accordingly, we reverse and vacate the Defendant's drug convictions and dismiss the charges.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part, Reversed in Part; Charges Dismissed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and JOHN W. CAMPBELL, SR., J., joined.

Brennan M. Wingerter, Assistant Public Defender-Appellate Division, Tennessee District Public Defenders Conference (on appeal); Marcus A. Lipham, Jackson, Tennessee (at trial), for the appellant, Markell Nolen.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin L. Barker, Assistant Attorney General; Jody Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## Factual Background

Deputy Christian McAlister of the Weakley County Sheriff's Office testified that, in October 2021, he was working as a patrolman for the Jackson Police Department. During the early evening of October 3, 2021, he was in his marked patrol car parked in a gas station parking lot. He described his location as being in "a very high crime area." He noticed the Defendant drive by and that, when the Defendant was stopped by a traffic light, one of the Defendant's brake lights was not working. He saw the Defendant notice him, whereupon the Defendant pulled into another gas station. The Defendant sat in his car for a few minutes, went inside the gas station, and, approximately five minutes later, left the gas station carrying a drink. Deputy McAlister testified, "five minutes is a long time to spend getting one object."

After the Defendant got back in his car, he pulled onto a different street than the one he had left to enter the gas station parking lot. Although on a different street, the Defendant headed in the same direction he had been traveling before he pulled into the gas station. Deputy McAlister pulled behind the Defendant and signaled him to pull over, based on the inoperative brake light. The Defendant slowed down and, after 50 to 75 yards, turned into the parking lot of a fast food restaurant. As the Defendant turned into the parking space, the driver's door of his car "fl[ung] open." Deputy McAlister expected this action to precede either "a foot pursuit or a gunfight." Accordingly, Deputy McAlister drew his gun.

After the Defendant's car came to a complete stop, the Defendant remained in his car. The Defendant "did not pull any kind of weapon." Deputy McAlister approached the Defendant and then noticed that there was a child in the passenger seat. This child was the Defendant's twelve-year-old daughter. Deputy McAlister explained to the Defendant that he was conducting a traffic stop and that "no one's going to get shot." When Deputy McAlister checked with dispatch, he learned that the Defendant was driving on a suspended license.

Deputy McAlister asked the Defendant if the Defendant had any weapons or "narcotics" in the car. When the Defendant said he did not, Deputy McAlister asked the Defendant for consent to search the car, which the Defendant provided.

The Defendant and his child got out of the car and one or two other officers arrived on the scene. Deputy McAlister began searching the car. When he searched the trunk, he found tablets that he suspected were drugs contained in two plastic baggies inside a "party bag." Deputy McAlister thought the tablets were ecstasy. After one of the tablets was field tested, he confiscated the drugs and took the Defendant into custody.

- 2 -

Portions of the recordings taken by Deputy McAlister's dashcam and bodycam were admitted into evidence and shown to the jury. The dashcam recording demonstrates that, while the Defendant's left and center-mounted brake lights were working, the right brake light was not. As the Defendant was responding to Detective McAlister's signals to stop by turning left off of the road and then right into a parking space, the driver's door of the car swung open, consistent with centrifugal force if the door was unfastened. As the car then straightened when the Defendant stopped and parked, the door swung back closed.

The bodycam footage begins with Deputy McAlister approaching the Defendant as the Defendant sits in the driver's seat with his window down. Although it is clear that the Defendant is speaking, there is no audio during the first thirty seconds of the recording. After the audio begins, Deputy McAlister can be heard chastising the Defendant for driving some distance before stopping, for the driver's door swinging open, and for reaching under the seat. Deputy McAlister tells the Defendant, "that's how you get shot in Jackson." The Defendant denies having reached under any seat and explains that the car door does not work properly. When asked for identification, the Defendant says that he does not have any on him but recites his social security number. When Deputy McAlister runs a check on the Defendant, he learns that the Defendant has "no priors," but that his driver's license is suspended. The Defendant explains that his license is suspended due to unpaid child support and other fees. Deputy McAlister asks the Defendant if he has any narcotics in the car, and the Defendant responds, "No, sir." The Defendant gives Deputy McAlister consent to search the car. When Deputy McAlister asks the Defendant whose car it is, the Defendant responds that the car belongs to his step-father, "out of Antioch" (an area of Nashville). The Defendant also states that he lives in Nashville and was in Jackson to pick up two of his children. He was otherwise unfamiliar with Jackson.

The video recording of the search demonstrates that the interior of the car is very messy. Deputy McAlister finds no contraband in the interior of the car. Deputy McAlister then opens the trunk, which is filled with a disorganized array of multiple objects. As Deputy McAlister rummages through all of the jumbled items, he opens a black drawstring bag which contains a white plastic shopping bag. Inside that bag are two small clear plastic bags filled with what appear to be multi-colored tablets. One of these small bags is closed while the other one is open. When Deputy McAlister shows the closed plastic bag of tablets to the Defendant and asks him if he knows what it is, the Defendant replies, "Uh, uh" (indicating a negative). When another officer tells the Defendant that they will have to test the tablets unless the Defendant tells them what the tablets are, the Defendant responds, "Test it. I don't know what that is." The bodycam footage shown to the jury ends at that point.

On cross-examination, Deputy McAlister admitted that, in the written report he prepared on this incident, he stated that the Defendant's taillight was out rather than his

brake light. He admitted that the reason for this discrepancy was "probably just go in a hurry trying to get paperwork done, wasn't paying attention to what I was doing." He made the same mistake in the affidavit he prepared for the Defendant's arrest warrant.

Deputy McAlister acknowledged that the Defendant had explained to him that the door on the car had some "issue" causing it to "fling open ever[y] once in a while." He also acknowledged that the car was not registered to the Defendant. The person to whom the car was registered was never interviewed, and the Defendant never indicated that the tablets were his. The bags in which the tablets were found were not tested for fingerprints or DNA. Although $300 cash was found in the Defendant's possession, that money was not confiscated because there was nothing connecting it to the tablets. The Defendant stated that the cash was his rent money.

Carter Depew, Special Agent Forensic Scientist with the Tennessee Bureau of Investigation, testified that she tested the tablets recovered from the car the Defendant had been driving. The tablets tested positive for methamphetamine. The total weight of all the tablets was 293.03 grams.

The State rested its case without putting on any proof about the monetary value of the tablets.

The defense presented no witnesses.

Upon this evidence, the jury convicted the Defendant of one count of possessing methamphetamine with the intent to sell; one count of possessing methamphetamine with the intent to deliver; and one count of driving on a suspended driver's license. The jury acquitted the Defendant of operating a car without proper lights. After a sentencing hearing, the trial court merged the two possession offenses and sentenced the Defendant to an effective term of ten years in the Department of Correction.

In his motion for new trial, which the Defendant pursued *pro se*, the Defendant alleged that he had received the ineffective assistance of counsel at trial and challenged the sufficiency of the evidence supporting his drug convictions. We will first address the Defendant's ineffective assistance of counsel claim.

## Ineffective Assistance of Counsel Claim

The Defendant sought, and was permitted after a colloquy, to pursue *pro se* his motion for new trial. In addition to challenging the sufficiency of the evidence supporting his drug convictions, the Defendant contended that he had received the ineffective assistance of counsel at trial. After the hearing on the Defendant's motion for new trial,

the trial court denied this claim. The Defendant now asks this Court to overturn the trial court's denial of his ineffective assistance of counsel claim.

The trial court denied the Defendant's claim on the basis that he "failed to prove, by clear and convincing evidence," that his trial lawyer's performance was deficient or that any alleged deficiency prejudiced him. Cf. Strickland v. Washington, 466 U.S. 668, 687 (1984) (holding that, to establish a claim of ineffective assistance of counsel, a defendant must prove that his lawyer's performance was deficient and that the deficient performance prejudiced the defense). We review the trial court's findings of fact *de novo*, accompanied by a presumption of correctness unless the evidence preponderates otherwise. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). We review the trial court's conclusions of law *de novo*. Id.

At the motion for new trial hearing, neither the Defendant nor the State called any witnesses with regard to the Defendant's ineffective assistance of counsel claim. While the Defendant recited his allegations about his trial lawyer during the hearing, that recitation was not sufficient to prove his claim. Accordingly, we are constrained to affirm the trial court's denial of the Defendant's claim of ineffective assistance of counsel at trial.

We turn now to the Defendant's contention that the evidence at trial was not sufficient to support his possession of methamphetamine convictions.

## Standard of Review

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for

sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." Wagner, 382 S.W.3d at 297 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

Although we are bound to defer to all reasonable inferences drawn by the jury from the proof at trial, "the jury may not speculate an accused into the penitentiary." State v. Pack, 421 S.W.3d 629, 643 (Tenn. Crim. App. 2013) (citation omitted). As this court has made clear, "a conviction for a criminal offense cannot be predicated solely upon conjecture, guess, speculation, or a mere possibility that he or she may be guilty." State v. Transou, 928 S.W.2d 949, 955 (Tenn. Crim. App. 1996) (citing Rucker v. State, 129 S.W.2d 208, 210 (Tenn. 1939); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)).

## ANALYSIS

Our criminal statutes provide that "[i]t is an offense for a defendant to knowingly . . . [p]ossess methamphetamine with intent to manufacture, deliver or sell methamphetamine." Tenn. Code Ann. § 39-17-434(a)(4) (2014). A defendant acts knowingly "with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b) (1989). At issue in this case is whether the proof established that the Defendant knowingly possessed the tablets found in the trunk of the car he was driving but did not own.

As recognized by the Tennessee Supreme Court, "'possession' may be either actual or constructive." State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001) (citing State v. Patterson, 966 S.W.2d 435, 444–45 (Tenn. Crim. App.1997); State v. Brown, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995)). Actual possession is established where a person "'knowingly has direct physical control over a thing, at a given time.'" State v. Edmondson, 231 S.W.3d 925, 928 (Tenn. 2007) (quoting Black's Law Dictionary 1163 (6th ed. 1990)). For instance, a defendant may be found to be in actual possession of drugs when the drugs are found on his person. See, e.g., State v. Dorton, No. E2013-01580-CCA

- 6 -

R3-CD, 2014 WL 3893363, at *17 (Tenn. Crim. App. Aug. 11, 2014) (defendant had actual possession of drugs in pill bottles found on his person); State v. Jones, No. 02C01-9601-CC-00030, 1996 WL 629199, at *2 (Tenn. Crim. App. Oct. 31, 1996) ("Here, there is no doubt that the defendant Jones actually possessed the cocaine: it was in his mouth.").

Alternatively, "'[a] person who, although not in actual possession, knowingly has both the power *and the intention* at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.'" Edmondson, 231 S.W.3d at 928 (quoting Black's Law Dictionary 1163 (6th ed. 1990)) (emphasis added). Significantly, "[o]ne's mere presence in an area where drugs are discovered, or one's mere association with a person who is in possession of drugs, is not alone sufficient to support a finding of constructive possession." Shaw, 37 S.W.3d at 903 (citing State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)).

Our pattern jury instructions reflect our case law regarding the illegal possession of drugs:

> There are two types of possession recognized in the law: actual possession and constructive possession. A person who knowingly has direct physical control over an object at a given time is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and intention at any given time to exercise dominion and control over an object, either directly or through others, is then in constructive possession of it. However, the mere presence of the defendant in an area where drugs are found is not sufficient, standing alone, to find constructive possession. Neither is the defendant's mere association with a person in control of the drugs or the property where the drugs are located.

T. P. I. – Crim. 31.04 (Sept. 2021, Sept. 2025 eds.). We note that, while the trial court in this case instructed the jury in accordance with the first three sentences of this instruction, the trial court omitted the final two sentences from its charge to the jury. Because neither party raises any issue before this Court regarding this incomplete jury instruction, we decline to further address it.

The Tennessee Supreme Court has stated that the issue of constructive possession must be determined from the totality of the circumstances, and that it may be proven by circumstantial evidence. State v. Robinson, 400 S.W.3d 529, 534 (Tenn. 2013) (citation omitted). We find helpful the thorough discussion of this issue by Justice Koch in an earlier case:

- 7 -

In order to prove simple possession of a controlled substance, the evidence must establish that the accused, either individually or jointly with another, exercised dominion and control over the controlled substance, had knowledge of the presence of the controlled substance, and had knowledge that the substance was, in fact, a controlled substance. Tenn. Code Ann. § 39-17-418(a); see also State v. Thornton, 10 S.W.3d 229, 241 (Tenn. Crim. App. 1999).

Possession or control cannot be established solely by evidence showing that the accused was in the vicinity of the controlled substance or that the accused was in the presence of persons possessing a controlled substance. State v. Shaw, 37 S.W.3d at 903; State v. Cooper, 736 S.W.2d at 129. When the accused is not in exclusive possession of the place where the controlled substance is found, additional incriminating facts and circumstances must be presented which affirmatively link the accused to the controlled substance in order to raise a reasonable inference of the accused's knowledge and control over the controlled substance. Roach v. State, 7 So.3d 911, 926-27 (Miss. 2009); State v. Mercado, 887 S.W.2d 688, 691 (Mo. Ct. App. 1994); Poindexter v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005).

Other courts have listed many such factors. See, e.g., Hargrove v. State, 211 S.W.3d at 385-86. Most frequently, they have weighed (1) whether the drugs were in plain view and (2) whether contraband was in close proximity to the defendant. Courts have also considered numerous other factors, including (3) conduct on the part of the defendant indicative of guilt, including furtive gestures and flight; (4) the quantity of drugs present; (5) the proximity of the defendant's effects to the contraband; (6) the presence of drug paraphernalia; (7) whether the defendant was under the influence of or possessed additional narcotics; (8) the defendant's relationship to the premises; and (9) incriminating statements made by the defendant.

The logical force these factors have in establishing the elements of the offense, rather than the number of factors present, should be the primary consideration. Edwards v. State, 178 S.W.3d 139, 144 (Tex. App. 2005). It is significant when the controlled substance is in plain view and in the presence of the accused. Duncan v. State, 986 So.2d at 655. As Professor LaFave has noted, when another person is committing visibly criminal acts in the presence of the accused, "then the chances are substantially greater that a companion of the offender is something more than a mere bystander." 2 Wayne R. LaFave, Search and Seizure § 3.6(c), at 348 (4th ed. 2004)

(footnote omitted) ("2 LaFave, Search and Seizure "); see also Post v. State, 580 S.W.2d 801, 805-06 (Tenn. Crim. App. 1979) (finding joint possession when defendant resided at mobile home where drugs were kept and knew marijuana was kept there); Perry v. State, 527 S.W.2d at 750-51 (finding joint possession when bricks of marijuana were found in common area and under defendant's bed, despite some evidence that other resident, along with another codefendant, were "entirely responsible" for drugs).

State v. Richards, 286 S.W.3d 873, 885-86 (Tenn. 2009) (Koch, J., dissenting).

In this case, the State argues that the evidence was sufficient for the jury to convict the Defendant of the charged drug crimes based on the following circumstances: (1) the Defendant was driving the car in which the drugs were found; (2) the Defendant pulled into a gas station after seeing the parked patrol car in which Deputy McAlister sat; (3) the Defendant left the gas station on a different road than the one from which he entered; (4) the Defendant disclaimed ownership of the car; and (5) the Defendant disclaimed knowledge of the drugs. The State characterizes the Defendant's pulling into the gas station, spending a few minutes there while purchasing a beverage, and leaving by a different road as "behavior indicative of guilt" meant to "throw Officer McCalister off the scent." The State also characterizes the Defendant's assertion that he did not own the car as a circumstance indicating constructive possession. Finally, the State emphasizes that the jury had the right to discredit the Defendant's denial of any knowledge of the drugs, implying that, by discrediting the Defendant's statements, the jury had the right to conclude that the Defendant *did* have knowledge about the drugs.

We are not persuaded. There is nothing illegal or indicative of guilt when a driver pulls into a gas station, even when he does so after visibly taking note of a nearby police officer. There is nothing illegal or indicative of guilt when a driver spends several minutes in a gas station in order to purchase a drink, especially when there is no evidence that the driver was not delayed by a long line or by using the restroom facilities. There is nothing illegal or indicative of guilt when a driver leaves a gas station by a different road than the one from which he entered the gas station, unless (1) the new road is a detour from the driver's original route and appears to be taken to evade apprehension and/or (2) the driver leaves at a high rate of speed. There is no proof in this case that the Defendant's exit from the gas station was a detour or otherwise evasive or that he sped away from the gas station. There is nothing illegal or indicative of guilt when someone states that they do not own the car they are driving, when that statement is true. Finally, there is nothing illegal or indicative of guilt when, in response to being questioned, someone states that they are unaware of the presence of drugs hidden in the trunk of a borrowed car.

Of course, the Defendant's (1) being in sole control of a vehicle (2) in which a significant amount of contraband was found *are* circumstances indicative of a drug offense. However, this court has recognized that, "[w]hen the contraband is in a location under the control of multiple persons [such as a car owned by one person but driven by another], 'incriminating circumstances other than the defendant's mere occupancy, ownership, or presence have contributed to findings of sufficient evidence of constructive possession.'" State v. Siner, No. W2020-01719-CCA-R3-CD, 2022 WL 252354, at *6 (Tenn. Crim. App. Jan. 27, 2022) (quoting State v. Porter, No. W2004-02464-CCA-R3-CD, 2005 WL 2333569, a *4 (Tenn. Crim. App. Sept. 21, 2005)). Such additional circumstances include "the open and obvious nature of the contraband." Id.

Significantly, the State has cited no case in which our courts have held that the sole circumstances of being in control of a borrowed vehicle in which a quantity of drugs is hidden in the trunk are sufficient to establish the knowing possession of drugs with the intent to sell or distribute. While the State cites repeatedly to State v. Brown, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995), for the proposition that "[k]nowledge may be inferred from control over the vehicle in which the contraband is secreted," the federal case law relied on by Brown for that proposition is not so stark. See United States v. Pierre, 932 F.2d 377, 392 (5th Cir. 1991), rev'd en banc, 958 F.2d 1304 (5th Cir. 1992). Rather, the Court of Appeals for the Fifth Circuit requires more than mere control of the vehicle in which contraband is found:

> Possession of or control over a vehicle does not, standing alone, suffice to prove guilty knowledge. United States v. Martinez-Mercado, 888 F.2d 1484, 1491 (5th Cir. 1989); United States v. Olivier-Becerril, 861 F.2d 424, 426 (5th Cir. 1988). Thus where the case involves "hidden compartments within a vehicle, reliance should not be placed solely on control of the vehicle" and there should be corroboration such as "circumstances evidencing a consciousness of guilt on the part of the defendant." Olivier-Becerril, 861 F.2d at 427. Although this court has expressed an unwillingness "to rely *solely* on control of the vehicle" to affirm a finding of knowledge, the court will sustain a jury's determination if other circumstances demonstrate consciousness of guilt. United States v. Richardson, 848 F.2d 509, 512-13 (5th Cir. 1988). See Martinez-Mercado, 888 F.2d at 1491. In sum, knowing possession can be inferred from the defendant's control over the vehicle in which the illicit substance is contained *if there exists other circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge.* Martinez-Mercado, 888 F.2d at 1491; Olivier-Becerril, 861 F.2d at 426-27.

- 10 -

United States v. Anchondo-Sandoval, 910 F.2d 1234, 1236 (5th Cir. 1990) (latter emphasis added).

Multiple cases from this court are in accord with the approach set out in Anchondo-Sandoval. For instance, in State v. Cheairs, this court held the evidence sufficient to support the defendant's conviction of unlawfully possessing a firearm where the defendant was the sole occupant of the vehicle and the gun was found under the front passenger seat, "well within [his] reach." No. W2024-00312-CCA-R3-CD, 2025 WL 407435, at *11 (Tenn. Crim. App. Feb. 5, 2025), perm. appeal denied (Tenn. June 23, 2025). The gun was located "[e]xtremely close" to the place from which the defendant retrieved a bag of marijuana, which the defendant admitted was his. The proof also included rap lyrics recorded by the defendant a few days after his arrest in which he mentioned getting caught with his "FN," the type of gun found in the car.

In State v. Anderson, this court upheld the defendant's convictions of possession of drugs with the intent to sell/deliver where the defendant was the driver and sole occupant of a borrowed car and, after being pulled over, officers noticed a strong odor of marijuana coming from the interior of the car, a bag containing marijuana was located on the center console, and a duffel bag containing marijuana, cocaine, hydrocodone, and drug paraphernalia was located on the floorboard behind the front passenger seat. No. W2018-01475-CCA-R3-CD, 2019 WL 5459278, at *3 (Tenn. Crim. App. Oct. 24, 2019).

In State v. Baker, this court upheld the defendant's conviction of possession of marijuana with intent to sell/deliver where the defendant was driving his mother's SUV with two passengers, the defendant fled from the police in the vehicle, a digital scale was recovered from the driver's side of the vehicle, which the defendant admitted was his, and almost 350 grams of marijuana was found in plain view in the front passenger compartment of the SUV. No. W2018-00732-CCA-R3-CD, 2019 WL 2404977, at *5 (Tenn. Crim. App. June 7, 2019).

In State v. Gill, this court deemed the totality of the circumstances sufficient to support the defendant's convictions of possession of contraband where the defendant took off running when approached by the police after he parked his rented car, officers discovered the smell of marijuana in the car as well as the remains of burned marijuana in plain view, additional drugs were found in the passenger compartment and trunk of the car, and the defendant's identification was also found in the trunk of the car. No. W2018-00331-CCA-R3-CD, 2019 WL 549651, at *1, 10-11 (Tenn. Crim. App. Feb. 11, 2019).

In State v. Collins, this court concluded that the totality of the circumstances was sufficient to support the defendant's drug and firearm convictions where the defendant was the driver and sole occupant of a vehicle, the defendant attempted to flee officers signaling

him to stop, a backpack matching the description provided by a confidential informant and containing contraband was found in plain sight on the floorboard of the front passenger compartment, and the backpack was easily accessible from the driver's seat. No. M2015-01030-CCA-R3-CD, 2017 WL 2126704, at *1, 9 (Tenn. Crim. App. May 16, 2017).

In State v. Davis, the defendant was pulled over while driving his truck accompanied by a passenger, and drugs were found in the truck, located in "the center of the seat, within arm's reach" of the defendant. W2008-00226-CCA-R3-CD, 2009 WL 160927, at *6 (Tenn. Crim. App. Jan. 23, 2009). "He needed only to reach to the middle of the truck he was driving and take the bag of drugs and paraphernalia into his hand in order to be in actual possession of it." Id. While the defendant blamed the drugs on his passenger, this court held that the jury was entitled to reject that contention and that the evidence was sufficient to support the defendant's convictions of possession of methamphetamine with the intent to sell and/or deliver and the possession of unlawful drug paraphernalia. Id.

In State v. Hurd, this court held that the evidence was sufficient to support the jury's conclusion that the defendant possessed drugs jointly with his passenger where the proof demonstrated that the defendant was driving his passenger's car, there were drugs located in the passenger compartment, "the odor of marijuana emanated from the car," and the defendant was determined to be under the influence of marijuana. No. E2002-00832-CCA-R3-CD, 2003 WL 22303083, at *4 (Tenn. Crim. App. Oct. 8, 2003).

And, in Shaw, the Tennessee Supreme Court agreed with this court's holding that the proof was sufficient to support the defendant's conviction of possession of cocaine with intent to deliver where the defendant was driving and, when he was pulled over, took a pill bottle out of his pocket and tossed it to his passenger. The passenger tossed the pill bottle back, and it landed in the car. The bottle was found, and it contained cocaine. Additionally, the defendant walked away from the car shortly after it was stopped and appeared to be "extremely nervous" when asked for his driver's license. The totality of these circumstances, including the passenger's testimony that the defendant had originally had the drugs on his person, was sufficient to support the accused's conviction. 37 S.W.3d at 903-04.

These cases make clear that, as our pattern jury instructions provide, "the mere presence of the defendant in an area where drugs are found is not sufficient, standing alone, to find constructive possession." Even where the defendant is the driver of the car in which the drugs are found that circumstance, in and of itself, is not sufficient to support a finding of constructive possession. Rather, there must be some additional proof from which a jury can legitimately infer that the defendant was *aware* of the drugs.

Returning to the nine factors identified by Justice Koch in Robinson, the proof in this case established that (1) the tablets were not in plain view; (2) the tablets were not in close proximity to the Defendant; (3) the Defendant's conduct was not indicative of guilt; (4) the quantity of drugs was significant in weight, but the record contains no proof about the street value of the drugs;[1] (5) there was no proof that any of the other items in the trunk belonged to the Defendant; (6) there was no presence of drug paraphernalia; (7) there was no proof that the Defendant was either under the influence of any drugs or that he possessed any other drugs; (8) the Defendant did not own the car but had borrowed it from his step-father; and (9) the Defendant made no incriminating statements.[2]  In sum, the State did not adduce any proof from which a jury could legitimately conclude that the Defendant was aware of the tablets found in the trunk.  Therefore, based on the totality of these circumstances, as well as our careful and thorough review of other pertinent cases, we hold that the State failed to adduce sufficient evidence to support the Defendant's convictions of possession of methamphetamine with the intent to sell/deliver.  Accordingly, we reverse and vacate these two convictions against the Defendant and dismiss the charges.

## CONCLUSION

We affirm the trial court's denial of the Defendant's claim of ineffective assistance of counsel at trial.  We reverse and vacate the Defendant's conviction for possession of methamphetamine with the intent to sell and his conviction for possession of methamphetamine with the intent to deliver, and we dismiss those charges.

s/ **Camille R. McMullen**

CAMILLE R. MCMULLEN, JUDGE

---

[1] If the evidence had established that the street value of the drugs was significant, it is less likely that the Defendant's step-father would have loaned the car to the Defendant unless he knew that the Defendant could be trusted with the drugs, thus arguably supporting an inference that the Defendant knew about the drugs.  See e.g., State v. Cave, 698 S.W.3d 499, 504 (Mo. Ct. App. 2024) (noting that a high monetary value of allegedly possessed drugs is relevant for showing that a defendant knowingly possessed the same).

[2] Both in its brief and at oral argument, the State appeared to imply that, by rejecting the Defendant's statements that he knew nothing about the tablets, the jury could properly infer guilty knowledge.  That is, the jury could transform its disbelief into affirmative evidence.  Again, the State cites to no authority for this alarming proposition, and we reject it.  See, e.g., State v. Alfonso, 490 A.2d 75, 81 (Conn. 1985)  (recognizing that, "'[w]hile it is true that it is within the province of the jury to accept or reject a defendant's testimony, a jury in rejecting such testimony cannot conclude that the opposite is true'") (quoting Novak v. Anderson, 423 A.2d 147, 148 (Conn. 1979)).